IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| SHAWN D. CROMER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: AMD-01-369 |
| CORRECTIONAL MEDICAL SERVICES, INC., | * | |
| Defendant. | * | |

* * * * * * *    * * * * *

## AMENDED PROPOSED JOINT PRETRIAL ORDER

COME NOW the parties by and through their attorneys and, pursuant to Local Rule 106.2 and this Court's order submit this proposed joint pretrial order:

a. **Plaintiff's statement of the Case**

During the time of the incident which is the subject of this suit, Plaintiff, Shawn Cromer, was incarcerated at the Western Correctional Institute near Cumberland, Maryland. The medical care for the institution was Correctional Medical Services, Inc. who employed physicians and other health care professionals to provide health care to the inmates of the facility. Mr. Cromer was prescribed various, highly sedative medications by employees of Correctional Medical Services, Inc. As with any sedative medication, the standard of care required the prescribing health professional to advise the patient of

the risks of the medication and, in a prison setting, ensure patient safety by prescribing the appropriate safety precautions to be taken to ensure patient safety.

At the time the sedative medications were prescribed for Mr. Cromer, he was housed in an upper bunk, approximately five to six feet from the floor. The health care providers who prescribed the sedative medications were aware of this fact, as well as the increased risk of falls from the upper bunk because of the sedative qualities of the prescribed medications. Mr. Cromer also asked for an order to sleep on a lower bunk, but this order was never written by the employees of Defendant. On January 17, 1999, Mr. Cromer fell from his upper bunk while sleeping, fracturing his ribs on his left side. In addition, Mr. Cromer was diagnosed with depression by employees of the Defendant and prescribed various medications, some of which were inappropriate for depression and had sedative effects. The Plaintiff alleges that the medications he was prescribed by the defendant's employees were inappropriate for his diagnosis and, the employees of the Defendant also failed to ensure that Mr. Cromer had the necessary orders for his safety while taking the medications.

> b. **A brief statement of facts that each defendant proposes to prove or rely upon as a defense thereto, together with a listing of the separate legal theories relied upon in support of each affirmative defense.**

Defendant, Correctional Medical Services, Inc. ("CMS"), is an independent contractor that provides medical services to detainees and inmates at various jails and prisons pursuant to contracts it has with the State and local governments that operate those facilities.

In the late fall of 1998, before he arrived at the Western Correctional Institution, where the alleged fall occurred January 17, 1999, plaintiff, Shawn Cromer, was prescribed Paxil, Vistaril, and Trazodone by a psychiatrist serving the Washington County [Maryland] Detention Center, an institution that CMS did not serve at that time. That psychiatrist had diagnosed plaintiff as having "major depression in partial remission." In addition, plaintiff complained of insomnia.

Plaintiff was transferred from the Washington County Detention Center to MRDCC (also not served by CMS at the time) on or about December 11, 1998; and from there to the Western Correctional Institution (WCI) on or about December 18, 1998. Upon intake at WCI, plaintiff's history of depression and current medications were noted and, pending an examination by a psychiatrist at WCI, the medications prescribed for him by the psychiatrist at the Washington County Detention Center were continued. Plaintiff was seen by a psychologist at WCI January 6, 1999. On January 12, 1999, a psychiatrist, Dr. Chissell, examined plaintiff. Dr. Chissell's notes reflect that during that examination, plaintiff acknowledged that he would be much worse off without the medications he was taking. Dr. Chissell rescheduled plaintiff for a follow-up examination and continued plaintiff's previously-prescribed regime of medications in the interim. On January 14, 1999, plaintiff submitted an "Inmate Request" form directed to the psychology department, complaining that his dosage of Trazodone had not been increased.

3

Plaintiff claims he fell from his bunk in his cell during his sleep January 17, 1999, and injured his left 10th and 12th ribs. Upon complaining of a fall, plaintiff was taken promptly to a hospital outside WCI for diagnosis and treatment. He was treated there immediately after his complaint of a fall, and on later occasions.

On January 19, 1999, plaintiff was seen again by a psychiatrist at WCI, as previously scheduled. He made no complaints about his medications and, in fact, did not even mention rolling out of his bunk. The psychiatrist increased the prescribed dosage of Trazodone and continued plaintiff's other current medications.

Prior to the January 17 incident, plaintiff had not had any near-falls or any other problems relating to sleeping in the top bunk in his cell. Plaintiff continued to take Trazodone (as well as Paxil and Vistaril) for several months after the January 17 incident. With the exception of the single occasion referred to above, when plaintiff complained that the dosage of Trazodone had not been increased (shortly before the January 17 incident), plaintiff never complained to any of his doctors at WCI about the effects of his psychiatric medications during the pertinent time period.

CMS's treatment of plaintiff complied with the applicable standard of care at all times and in all respects. In addition, plaintiff has not suffered any permanent injuries.

C. <u>Other Claims</u>

None.

D. <u>Amendments</u>

No amendments are required of the pleadings.

E. **Issues to be Abandoned**

None.

F. **Stipulations**

For plaintiff: It is anticipated that the parties will stipulate to the authenticity of the Plaintiff's medical records. Plaintiff requests that Defendant stipulate that the health care providers of Plaintiff who treated the Plaintiff during the incident in question, were employees or agents of the Defendant.

For CMS:

CMS will stipulate to the authenticity of plaintiff's correctional medical records.

CMS declines to stipulate as plaintiff requests regarding employment or agency, especially as plaintiff has not named the health care providers as to which he requests such stipulations.

G. **Details of the damages claimed or any other relief sought as of the date of the pretrial conference**

For plaintiff: Plaintiff is making claim for pain and suffering.

For CMS: Not applicable to defendant.

H. **Exhibits**

For plaintiff: At the time of trial, Plaintiff will offer the following documents into evidence:

Medical records of Shawn Cromer from Maryland Division of Corrections

Medical records from Dr. Cooper

Medical records of Sacred Heart Hospital 1/17/99

Defendant, CMS, expects to offer:

1. The correctional medical records of plaintiff, Shawn Cromer, including but not limited to plaintiff's mental health records and including but not limited to such records as may be obtained up until the time of trial.

2. Medical records for plaintiff from Sacred Heart Hospital.

3. Enlargements of the medical records of Shawn Cromer.

4. Any other medical records of plaintiff, including those described by plaintiff's counsel above in this proposed pretrial order.

Stipulations as to exhibits

CMS will stipulate to the authenticity of all of plaintiff's medical records produced to plaintiff's counsel by CMS during discovery in this case.

I. **Witnesses.**

For Plaintiff:

At the time of trial, Plaintiff is expected to testify. Plaintiff will also call any witnesses identified by the Defendant, including but not limited to:

Karl Kemp, Regional Administrator of Correctional Medical Services

Patricia Wright, M.D.

Plaintiff will also call David Williamson, M.D.

Annapolis, Maryland

For Defendant, CMS:

Witnesses CMS expects to present:

1. John R. Lion, M.D.
   5100 Falls Road
   Suite 328
   East Quadrangle
   Baltimore, Maryland 21210
   Telephone: c/o CMS's counsel: (410) 752-6030

Witnesses CMS may call if the need arises:

Plaintiff, Shawn Cromer; any witnesses on plaintiff's witness list; any witnesses called by plaintiff; any of plaintiff's treating health care providers; Karl Kemp (address: Maryland Correctional Institution -Hagerstown, 18601 Roxbury Road, Hagerstown, MD 21746.)

J. **Experts**

The Plaintiff will call the following expert at trial:

David Williamson, M.D.
113 Ridgley Avenue
Annapolis, Maryland

Dr. Williamson is board certified in psychiatry.

For CMS:

Dr. John R. Lion. Dr. Lion is Board-certified in psychiatry.

### K. Depositions

For plaintiff: None are known at this time.

For CMS: At present, CMS does not anticipate using any deposition testimony in its case in chief, because all witnesses are expected to testify live.

### L. **Other Pretrial Relief**

For plaintiff: Plaintiff will be filing a motion in limine to preclude any reference to Plaintiff's current incarceration.

For CMS:

1. In plaintiff's portion of the pretrial statement concerning damages claimed, plaintiff merely described the damages as "pain and suffering." Plaintiff did not state the amount he was claiming for pain and suffering. CMS is entitled to know, as it prepares for trial, what amount plaintiff is seeking.

2. Plaintiff's "summary of the opinion testimony expected from [its expert] witness", received by defendant's counsel December 19, 2002, lists subject matters as to which plaintiff has never disclosed any expert opinions or testimony previously; and areas in which plaintiff's expert, a psychiatrist, is not competent to offer any testimony. CMS therefore intends to file a brief motion *in limine* December 20, 2002, addressing these issues.

3. As the Court directed, CMS filed a motion *in limine* December 19, 2002, requesting a ruling from the Court that plaintiff's judgments of conviction for

forgery/uttering; fraud-conversion of leased goods; and robbery are admissible pursuant to Fed. Rule Civ. Pro. 609 for the purpose of impeaching plaintiff's credibility

**M.    Any other matters added by the Court.**

A concise summary of the opinion testimony expected from each expert witness

For Plaintiff:

Dr. Williamson, identified by Plaintiff as an expert witness in this case, will testify regarding the care and treatment of inmates in a prison setting, the confines of the prison setting, and the duties of prison health care providers to ensure inmate safety. Dr. Williamson is expected to testify that the medications prescribed by Plaintiff's treating physicians have a sedative affect which affects the sleep cycle. Dr Williamson is expected to testify that agents and/or employees of the Defendant knew or should have known of this effect of the medications and had a duty to provide for the Plaintiff's safety during the ingestion of these medications. Dr. Williamson will testify about the standard of care for health care providers working in a prison population and the duties of these health care providers to the prison population. Dr. Williamson will testify that the agents and/or employees of the Defendant failed to comply with the standard of care to ensure the Plaintiff's safety while he was medicated and, as a result of this failure, the Plaintiff fell from a height, injuring his chest and other body parts. Further, it is expected that Dr. Williamson will testify that the medications prescribed for the Plaintiff were inappropriate medications for Plaintiff's symptoms and diagnosis.

#### For Defendant, CMS:

CMS has designated Dr. John R. Lion as an expert pursuant to Fed. R. Civ. P. 26(a)(2)(B). CMS has not designated any other witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(A).

Dr. Lion, a psychiatrist, is expected to testify that the medications prescribed for plaintiff, including the dosages of those medications, were appropriately prescribed, and that CMS did not deviate from the standard of care in its treatment of Cromer.

Dr. Lion is expected to testify that Trazodone is commonly prescribed in incarcerated settings for people who cannot sleep; and that even for the general population, including patients in Dr. Lion's office, psychiatrists occasionally use Trazodone for patients who cannot sleep who have histories of being dependent on other medications.

Dr. Lion is expected to testify that the purpose of giving a sedative drug is to induce sleep and, worldwide, people are prescribed hypnotics for sleep. He is expected to testify that these medications do not make a person fall out of bed; and that if everybody who got a sleeping pill fell out of bed, there would be an epidemic of people falling out of beds. Dr. Lion is expected to further testify that, instead, this is not something that he hears about as a psychiatrist, either anecdotally or in the medical literature. Dr. Lion is expected to testify that almost all of the medical literature on falls deals with the geriatric population, and to testify about the reasons the elderly fall.

10

Dr. Lion also is expected to testify that CMS did not breach the standard of care with respect to Cromer's bunk assignment or sleeping arrangements.

Dr. Lion is expected to testify also that Paxil, an anti-depressant, can be an appropriate medication for insomnia and that in Cromer's situation, one has the problem of atypical usage of drugs a prison setting – one does not want to give sleeping pills, so the treating doctor "banks on" the side-effects of other medications to induce sleep; it is an indirect approach to insomnia necessitated by the incarceration (because of the risk of addiction connected to other medications). According to Cromer's medical records he was depressed. Depressed people don't sleep, so to treat the insomnia, the treating psychiatrist treats the depression, and Paxil was a correct drug for Cromer.

Dr. Lion is also expected to testify that Cromer remained on Trazodone for several months after his fall.

Dr. Lion also is expected to testify that there is no indication in Cromer's medical records that he complained of or experienced grogginess as a result of the medications he was on at the time of the January 17 incident.

Dr. Lion will also testify that, assuming Cromer fell, nothing CMS did caused Cromer to fall or caused the injuries for which he seeks compensation in this case.

Plaintiff's "summary of the opinion testimony expected from [its expert] witness", received by defendant's counsel December 19, 2002, lists subject matters as to which plaintiff has never disclosed any expert opinions or testimony previously; and areas in which plaintiff's expert, a psychiatrist, is not competent to offer expert testimony. CMS

89330/548/00064120.WPDv;    11

therefore will be filing a brief motion *in limine* December 20, 2002, addressing these issues.

Respectfully submitted,

*/s/ Diane M. Littlepage*

Diane M. Littlepage Bar No.: 10965
DIANE M. LITTLEPAGE, P.A.
1406B S. Crain Highway
Suite 207
Glen Burnie, Maryland 21061
410-787-7009

Attorney for Plaintiff

*/s/ Laura Maroldy*

Gertrude C. Bartel, Bar No. 00052
Laura Maroldy, Bar No. 24409
Kramon & Graham, P.A.
One South Street
Suite 2600
Baltimore, Maryland 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269

Attorneys for Defendant, Correctional Services, Inc.

Entered this 6TH day of January, 2003.

*/s/ Beth P. Gesner*

12

#9330/548/00064120.WPDv1